## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

KRISTY S. PARKER,       )
                          )
        **Plaintiff,**     )
**v.**                        )     **Case No. CIV-19-386-SPS**
                          )
**ANDREW M. SAUL,**    )
**Commissioner of the Social**  )
**Security Administration,**   )
                          )
        **Defendant.**    )

### OPINION AND ORDER

The claimant Kristy S. Parker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty years old at the time of the administrative hearing (Tr. 54). She completed ninth grade and has worked as a dietary aide and office manager (Tr. 54, 69). The claimant alleges that she has been unable to work since April 5, 2017, due to anxiety, depression, posttraumatic stress disorder ("PTSD"), nerve damage in her neck, and social anxiety (Tr. 204, 236).

### Procedural History

In April 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 204-17). Her applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 6, 2018 (Tr. 18-34). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work, *i. e.,* she could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, and sit/stand/walk at least six hours in an eight-hour workday, but must avoid work above

the shoulder level (Tr. 22). Additionally, the ALJ found the claimant was limited to simple, repetitive tasks, occasional interaction with supervisors and coworkers, and no work with the general public (Tr. 22). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, industrial sweeper-cleaner and meat trimmer (Tr. 32-34).

## Review

The claimant contends that the ALJ erred by: (i) failing to provide a narrative discussion describing how the evidence supports the RFC, (ii) improperly relying on the state agency psychologists' opinions, and (iii) failing to properly evaluate her subjective symptoms. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease, obesity, depression, PTSD, and personality disorder, but that her history of substance abuse was nonsevere (Tr. 20-21). The relevant medical records reveal that the claimant presented to her primary care physician, Dr. Gloria Grim on October 25, 2016, and reported, *inter alia,* neck pain radiating to her right arm that had been present for years (Tr. 358). On physical examination, Dr. Grim found tenderness to palpation in the claimant's neck and decreased range of motion (Tr. 359). She referred the claimant for a cervical spine MRI, the results of which revealed a posterior disc bulge at C5-6 resulting in moderate canal stenosis and mild left neural foraminal narrowing as well as a mild diffuse disc bulge at C4-C5 with resultant mild left neural foraminal narrowing (Tr. 358-

59, 370-71).  By April 2017, the claimant's neck pain had improved but was not resolved and Dr. Grim's physical examination was normal (Tr. 361).  On June 7, 2018, the claimant presented to physician assistant Sheila Johnson and reported, *inter alia*, neck and back pain with muscle spasm (Tr. 583-84).  Ms. Johnson found pain in the claimant's neck with flexion, extension, and lateral rotation, and pain with flexion in her upper lumbar and thoracic regions at the paraspinal muscles (Tr. 584).  She referred the claimant for a lumbar spine MRI that revealed mild degenerative disc disease at L3-4, L4-5, and L5-S1 causing mild central canal and mild bilateral neural foraminal stenosis as well as facet and ligament of flavum hypertrophy changes (Tr. 434-35).  Ms. Johnson also referred the claimant for a cervical spine MRI that revealed stable mild degenerative disc disease at C4-5 and C5-6 causing moderate central canal stenosis at C5-6 and mild left neural foraminal stenosis (Tr. 437).  At a follow-up appointment with nurse practitioner Jennifer Parker on August 31, 2018, the claimant reported increased pain in her back and neck that was interfering with her daily activities (Tr. 579-81).  Ms. Parker observed the claimant had a normal gait but was slow to transfer from sitting to standing and she referred the claimant to a neurosurgeon (Tr. 581).

Dr. Shihao Zhang examined the claimant on September 25, 2018 (Tr. 590).  She reported neck, upper extremity, low back, and lower extremity pain "essentially from her neck down to her lower back." (Tr. 590).  Dr. Zhang found intact strength, sensation, and reflexes in the claimant's upper extremities, noting she had discomfort with strength testing (Tr. 593).  As to the claimant's lower extremities, Dr. Zhang found intact strength and sensation bilaterally, normal reflexes in her right lower extremity, and no patellar tendon

reflex on her left lower extremity (Tr. 593).  He stated the claimant's lumbar spine MRI was benign and that her cervical spine MRI showed moderate stenosis at C5-6 (Tr. 593). Dr. Zhang recommended an epidural steroid injection at C5-6 for her neck pain but stated that there was no surgical intervention he could recommend for her lumbar spine (Tr. 593).

Dr. Christopher Sudduth performed a consultative physical examination of the claimant on August 11, 2017, the results of which were normal (Tr. 389-96).  Dr. Sudduth summarized his examination as follows: "On exam today, there is absolutely no impairment of range of motion or sensation.  The claimant had no neck pain today.  She did complain of some numbness over her right shoulder, but none in her right arm.  The remainder of her examination was entirely normal." (Tr. 392).

State agency psychologist Mary Rolison, Ph.D. completed a mental RFC assessment on June 7, 2017, wherein she concluded that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public (Tr. 83).  Her findings were affirmed on review (Tr. 110-12).

State agency physician Dr. David Bailey reviewed the record on September 5, 2017 and concluded that the claimant had no medically determinable physical impairments (Tr. 79).  On October 25, 2017, state agency physician Dr. Karl Boatman reviewed the record and concluded the claimant had no severe physical impairments (Tr. 120).

At the administrative hearing, the claimant testified that she very seldomly leaves the house by herself because she cannot "deal with people." (Tr. 57).  As to her physical impairments, the claimant stated that she experiences shoulder pain "pretty much 24/7"

(Tr. 63).  She further stated that she can do household chores for thirty or forty minutes before experiencing pain in her shoulders, neck, and lower back (Tr. 61).  As to specific limitations, the claimant testified that she could stand for fifteen minutes and up to an hour at times, but could never stand longer than an hour and could not lift her arms above her shoulders more than a few minutes (Tr. 62-64).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony and the evidence contained in the medical record (Tr. 18-34).  In discussing the opinion evidence at step four, the ALJ found Dr. Boatmen's assessment of nonsevere physical impairments unpersuasive in light of the state agency psychologists' assessment that the claimant's degenerative disc disease was severe and in light of the claimant's July 2018 cervical spine MRI, which he found indicated the claimant should avoid work overhead (Tr. 32).  The ALJ then stated that the RFC was supported by the medical evidence of record, including the consultative examinations, diagnostic imaging, and the medical records from the claimant's treating physicians, neurosurgery specialist, psychiatrist, and counselors (Tr. 32).

The claimant asserts that the ALJ erred at step four by failing to provide a narrative discussion that describes how the evidence supports the RFC and the Court agrees.  "The ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996).  "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the

court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at \*2 (D. Kan. 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ failed to link the medium RFC with evidence in the record. Although the ALJ limited the claimant to no overhead work due to degenerative disc disease in her cervical spine and appropriately summarized the evidence regarding her severe physical impairments, the ALJ nevertheless determined without any connection to the evidence in the record that the claimant could perform medium work. The ALJ pointed to no RFC assessment or physician opinion supporting this finding, and the Court is not able to substitute such a finding for him. A reviewing court may not properly determine how the ALJ reached the RFC determination when the ALJ "merely summarizes" much of the relevant evidence, states that he considered the entire record, "and then announces his decision." *Brant v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007) [internal quotation marks omitted]. As in *Jagodzinski*, "[t]he problem in this case is the absence of evidence regarding plaintiff's impairments and limitations[.]" 2013 WL 4849101, at \*5. "When the medical evidence indicates . . . that the record is insufficient to make an RFC finding, it is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform medium work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Id*. *See also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure

that the file contains sufficient evidence to assess RFC.") [quotations omitted].  This analysis was particularly important here because much of the evidence regarding the claimant's neck and back occurred after both the consultative examination and the state reviewing physician opinions.

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis of the claimant's impairments.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence.  Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 17th day of March, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**